Matter of A.A.C. Contr., Inc. v New York State Dept. of Economic Dev. (2021 NY Slip Op 03893)





Matter of A.A.C. Contr., Inc. v New York State Dept. of Economic Dev.


2021 NY Slip Op 03893


Decided on June 17, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 17, 2021

532135
[*1]In the Matter of A.A.C. Contracting, Inc., Petitioner,
v
New York State Department of Economic Development et al., Respondents.

Calendar Date:April 21, 2021

Before:Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Couch White, LLP, Albany (Stephen H. Orr Jr. of counsel), for petitioner.
Letitia James, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.



Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Executive Director of respondent Division of Minority and Women's Business Development denying petitioner's application for certification as a minority-owned business enterprise.
In 2017, petitioner, an asbestos abatement business founded in 1983, applied to respondent Division of Minority and Women's Business Development (hereinafter the Division) of respondent Department of Economic Development for certification as a minority-owned business enterprise (hereinafter MBE) (see Executive Law § 310 [7], [8]) on the ground that Kevin Cannan, petitioner's president, is a majority owner of the business and a member of the Native American Wyandot of Anderdon Nation. In June 2017, the Division requested additional information from petitioner, including financial records. Petitioner responded and provided various evidence. In August 2017, the Division denied petitioner's application, finding that petitioner did "not meet the eligibility requirements" set forth in Executive Law article 15-A. Specifically, the Division determined, as relevant here, that Cannan's alleged contribution to petitioner is not proportionate to his equity interest in the enterprise. To that end, the Division found that although Cannan's business partner and petitioner's shareholder, Frank Mazzarella Jr., transferred one share of common stock in petitioner to Cannan on January 2, 2016 — thereby rendering Cannan the majority shareholder — petitioner's application failed to demonstrate that Cannan paid consideration for such share.
Petitioner appealed the determination asserting, in relevant part, that Cannan contributed time, equity, expertise and money to petitioner, and attached a copy of a November 28, 2016 check for $1,000 that petitioner represented as evidencing Cannan's purchase of his share of stock from Mazzarella. A hearing was held before an Administrative Law Judge (hereinafter ALJ), after which the parties submitted posthearing briefs. The ALJ then issued a report recommending that the Division's denial of petitioner's application be affirmed. The ALJ noted that petitioner provided evidence of Cannan's $1,000 payment to Mazzarella for the one share of stock "only after the application was denied," and found that petitioner failed to provide information as to how the share was valued or if Cannan paid consideration proportionate to the value of such share. Respondent Executive Director of the Division (hereinafter the Director) accepted the ALJ's recommendation and affirmed the denial of petitioner's application for certification as an MBE. Petitioner then commenced this CPLR article 78 proceeding to annul the Director's determination. Supreme Court transferred the proceeding to this Court pursuant to CPLR 7804 (g).
Petitioner argues that the denial of its application based upon Cannan's contribution [*2]to petitioner is not supported by substantial evidence in the record. Pursuant to Executive Law § 310 (7) (a)-(c), an MBE is a business that is "at least [51%] owned by one or more minority group members" whose ownership interest is "real, substantial and continuing," such that the minority ownership "exercises the authority to control independently the day-to-day business decisions of the enterprise" (see 5 NYCRR 140.1 [bb]; 144.2). To establish a real, substantial and continuing majority ownership of a business, minority group members must demonstrate a capital contribution to the business that is "proportionate to their equity interest therein," and can do so by illustrating — through "documentary evidence" — one or more sources of a capital contribution, including money, property, equipment or expertise (5 NYCRR 144.2 [b] [2] [i]). "The regulations place the burden of proving eligibility for minority business certification on the applicant" (Matter of Marinelli Constr. Corp. v Sate of New York, 200 AD2d 294, 297 n 2 [1994] [citation omitted]). Pursuant to 5 NYCRR 144.1, the Director is authorized "to establish rules and regulations providing for criteria for the certification of minority and women-owned business enterprises," including "procedures for the . . . evaluation of applications" (see Executive Law § 314).
At the hearing, Cannan testified that he started petitioner in 1983 with three business partners, including Mazzarella, and that, by 2000, he and Mazzarella had "bought out" the other two partners. Cannan testified that since 2010, he and Mazzarella discussed Cannan owning additional stock in petitioner due to Mazzarella's decreased involvement in petitioner's management. Cannan's testimony indicates that from January 2000 to January 2016, Cannan and Mazzarella each owned 50 shares of common stock in petitioner, and then, on January 2, 2016, Mazzarella transferred one stock in petitioner to Cannan, thereby rendering Cannan a 51% owner and Mazzarella a 49% owner of petitioner. Cannan confirmed that, in mid-January 2017, he submitted an application online for petitioner to become certified as an MBE. Cannan testified that in such application, he listed his capital contributions as including the period of his entire ownership in petitioner until the date of the application. Cannan stated that he has contributed to the company more than Mazzarella, and that Mazzarella does not participate in the company day-to-day "at all." Cannan testified at length as to his own duties, including that he is responsible for managerial operations and makes most of the financial decisions for petitioner. Cannan's testimony reveals that petitioner has a $12 million bonding limit and Cannan serves as a personal guarantor. Moreover, petitioner has a line of credit on which Cannan is likewise a personal guarantor. Cannan testified that petitioner could not operate without his expertise and that petitioner needs a person with an asbestos supervisor [*3]license to function, as it is required for petitioner to be a certified asbestos company. Cannan testified that he has an asbestos supervisor license, but he added that an additional 50 to 60 of petitioner's 150 employees also have this license.
Raymond Emanuel, the Division's director of certification, testified that he reviews the work of senior analysts who assess applications for MBE certification and he is familiar with petitioner's application. Emanuel recalled that the analyst who reviewed the application initially recommended denial of certification, which Emanuel believed was the correct determination "based on the ownership" of petitioner, as "the contribution of [Cannan] was not proportionate to his 51[%] ownership as demonstrated in the documents provided." More specifically, Emanuel stated that, according to records submitted by petitioner's accountant, petitioner had a "reported total stock holders investment book value of equity of $2,027,078" in 2016, and Cannan's portion of equity in the company was $1,033,810. Emanuel explained that petitioner failed to provide evidence of Cannan's consideration for the 51st share of stock he acquired in 2016, and, even after the Division requested additional information, there was still "no documentation of [the same]. There were no meeting minutes. There was no statement, no signed agreement related to that." When asked about testimony from Cannan that he paid $1,000 for the share of stock, Emanuel added that Cannan's $1,000 check to Mazzarella was not submitted to the Division before the denial of petitioner's application for certification was made, and, moreover, the check was dated November 28, 2016, while petitioner asserted that the stock transfer occurred in January 2016. In sum, Emanuel testified that petitioner's value in 2016 according to the book value of business "was for over [$2] million," and "$1,000 does not represent 1[%] of the book value of the company." Emanuel's testimony confirms that equity, expertise and property are also acceptable methods of contribution to a business, and that he reviewed Cannan's expertise in comparison to the other shareholders. Emanuel stated that "even though . . . Cannan has more expertise, it was not stated [in the application] that this is what the contribution is." Finally, Emanuel testified that if petitioner applied for certification again and supported his application with more robust documentation, the application may be looked upon more favorably, although he does not know what the ultimate conclusion would be.
Here, the Director's determination to deny petitioner's application for MBE certification is supported by substantial evidence. Turning first to the issue of ownership, although petitioner alleged that Cannan purchased his 51st share of stock in petitioner in January 2016, petitioner failed to submit evidence that Cannan paid adequate consideration for the stock transfer that purportedly made him a majority shareholder [*4]until after petitioner's application was already denied. In light of this failure, the Division's determination that petitioner did not meet its burden to prove that Cannan had a majority interest of 51% in petitioner is supported by substantial evidence (see 5 NYCRR 144.2 [b] [1]; Matter of Coverco, Inc. v New York State Dept. of Economic Dev., 159 AD3d 1538, 1539 [2018]). Although petitioner relies on the $1,000 check submitted after its application was denied, the check itself, as noted both by the ALJ and Emanuel, is dated November 28, 2016, while the stock transfer at issue is alleged to have occurred in January 2016. Even assuming that the check was submitted earlier, Emanuel's testimony clarifies that petitioner's application was denied in part because of the amount of consideration that Cannan provided to Mazzarella via the check. Although the $1,000 value of the share was set forth in a shareholder's agreement executed the same day as the alleged stock transfer, Emanuel testified that petitioner's revenues for 2016 exceeded $12 million, its book value in 2016 was over $2 million and the $1,000 check was not representative of 1% of petitioner's book value. Bearing in mind that substantial evidence is a "minimal standard" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018] [internal quotation marks and citation omitted]; see Matter of Perez v New York State Justice Ctr. for the Protection of People with Special Needs, 170 AD3d 1290, 1291 [2019], lv denied 34 NY3d 903 [2019]) and given that petitioner failed to prove that Cannan paid consideration for the stock transfer until after its application was denied and that Emanuel's testimony called into question the sufficiency of the consideration purportedly paid by Cannan based on the business' valuation, the Director's denial of the application is supported by substantial evidence (see 5 NYCRR 144.2 [b] [1]).
As a separate basis to deny petitioner's application, the determination that Cannan did not make a capital contribution to petitioner proportionate to his alleged 51% equity interest is also supported by substantial evidence (see 5 NYCRR 140.1 [bb]; 5 NYCRR 144.2 [b] [1], [2]). In the application itself, petitioner answered the "cash and capital contributions" question by indicating that Cannan paid $299,088 in common stock in 1983. After the Division denied petitioner's application, Cannan appealed the determination and argued that he contributed more to petitioner "in time, sweat equity, expertise and also in money" than did Mazzarella. At the hearing, Emanuel testified that the Division reviews "what the applicant says [he or she] have contributed as [his or her] contribution. So even though [Cannan] has more expertise [than Mazzarella], it was not stated that this is what the contribution is" in the application itself. Although there are facts that could have supported a different result, substantial evidence supports the determination that Cannan [*5]did not make a capitol contribution to petitioner proportionate to his alleged 51% equity interest (see 5 NYCRR 144.2 [b] [2]; Matter of Upstate Elec., LLC v New York State Dept. of Economic Dev., 179 AD3d 1343, 1345 [2020]; Matter of Panko Elec. & Maintenance Corp. v Zapata, 172 AD3d 1682, 1683-1684 [2019]). In light of this determination, we need not reach petitioner's remaining arguments.
Lynch, J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.